May it please the Court, Steve Lathrop on behalf of Appellant Carlos Mendoza. The Attorney General of the State of California is framing the issue as one in which a language barrier automatically, or does not rather, toll the statute of limitations. Counsel, is there any case that says that the statute gets tolled as long as there is not a library in the language of the particular petitioner? No. No. I would think a lot of people who are in prison aren't that smart and a lot of them didn't do that well in school. Is there any case that says the statute is tolled if the prisoner is illiterate or has poor reading skills? No. Not alone. And I think what distinguishes this case and what are the extraordinary circumstances in this case which toll the statute of limitations is that this was a plea of no low contendering and it's averred under oath, and it's uncontested by the Attorney General, actually it's a record, page four, that the trial judge told Mr. Mendoza he did not have the right to appeal. And no direct appeal was filed. So it's extraordinary because you typically have a situation where the trial judge informs the defendant of his appellate rights and there's a direct appeal. It was a State-appointed lawyer. I do State-appointed work myself. Was there any right to appeal? Yes. In many States, if you plead guilty or no low, there is no right to appeal. The only reason there's a right to appeal in Federal court is sentence appeals. Right. And there is. Yes, there is. And under California law, you can appeal. Your guilty plea never forecloses your appeal of sentencing issues. And, of course, here we have potential Let's suppose that. Let me back up to my other concern. If you were to prevail and we were to publish an opinion, I think it would mean, and you educate me if it doesn't mean this, I think it would mean that every illiterate prisoner and every prisoner whose language that he reads in is other than the language of the books in the prison law library would have no statute of limitations. That's, no, that's not what we're requesting, Your Honor. And that's not what the opinion should say. How would it be distinguished in a case where a prisoner says, I only read Lao or I only read Afrikaans or I only read Chinese? It would be distinguished, this case would be distinguished on its unique facts, that he was affirmatively told by the state judge that he had no appellant right. He didn't have an appellate attorney. So, therefore, after the direct, usually when the direct appeal is finished, the state appellate lawyer tells the client in writing after he loses that you've got one year to file your Federal habeas. That never occurred here because he never had a direct appeal, never had a lawyer on appeal. He gets to the prison, the reception center. He tries to, he's upset about the sentence. He wants to know why he got the full 14 years, 10 years max for the high term on the enhancement, high term on the underlying offense, 14 years, 4 and 10. And he diligently tries to pursue what his legal rights are if he has any. And it's not until May of 2003, the statute ran in August of 2002, sentenced, it's not until May of 2003 when a jail, he finally meets a jailhouse lawyer that assists him with this. Well, but isn't the issue here whether he can speak or not, that there's, where does, it seems to me what distinguishes this case on its facts from the materials, the person being illiterate or not, the illiterate people can be talked to. And in this case, the impression I get is that he was sort of left on his own to go find somebody who was bilingual. Whether or not the materials were in Spanish, unless he can find somebody he can talk to who can then translate or do something for him, the issue, at least for me, is the bilingual problem, the unilingual or monolingual problem of the person trying to get access to somebody who can tell him what the books that may or may not be available say. Right. That's correct. And the additional fact on page, actually it's right there on page 24, is that it, he avers under penalty of perjury, that's not contested by the attorney general, that he's not left in, during that year and a half, that first year and a half when he's in prison, he's left in a position that he's not in contact with any Spanish speakers. Well, how does he communicate then to find out the information that he did learn? Well, in May of 2003. No, I mean, when you were starting out, he went, didn't he go to the library, went somewhere and he was told something, right? He was told various things. He went to the library, he tried to go get some information at the reception center, first three months of his incarceration. He claims to have tried to use the reception library only to find it carried no Spanish books and was specifically told by the person who ran the library that this was a reception center library and he would have to wait until he got to his regular assigned prison. Presumably that person was communicating to him in Spanish. Is that correct? Yeah, that's part of the problem. It's not, it's unclear. Well, how could he understand it? I mean. Yeah, he must. Well, it's, there's, there are some inconsistencies in the record, the record is unclear and it has gaps. That's why I'm requesting an evidential hearing because there are, there are these gaps. We do know from the record, and I think what's significant here is not only that he was told by his, didn't have a lawyer, was told by the trial counsel something false. Then he, he doesn't, he's segregated from Spanish speakers until May of 2003. If the. Counsel, counsel, wait a minute. Why can't we infer that there are numerous bilingual people in the prison and accessible to them from his filing of, I think it's dozens of declarations that are in English by people, each of whom swears that he is a Spanish speaking person and Spanish reading person. And that's a good point. Let me answer that directly. That's really the crux of the district court's ruling. The magistrate found that, you know, he ended up filing all this in, in English. So therefore, you know, that he, therefore, you know, that can, we can infer. It's not just that his filing is in English. It's that he files sworn statements from numerous people who represent that they are bilingual. Right. Well, but the state of the record is that it was not until May of 2003 that he ran into this jail, jail house lawyer, Antonio, that then provided all this information for him. And if the statute of limitations is told up to May of 2003, it's timely because he then within two months filed the state petitions and then pursued those through the April of 2004, filed his federal petition. So he was, if you told up to May, you could even told, you know, So what's in the record to show the availability of anybody who can translate for him so he can make the judgments, even if he can't read, somebody can read to him. What, what's the availability of a bilingual person who can assist him? His declarations are that until May of 2004 or three, he had no, that was the first time he kept trying and he kept, he kept getting told by somebody in what language what he's not getting again. Well, isn't the problem in this case is really the second point you raise is that district courts are probably held in evidentiary hearing. Absolutely. Exactly. What, you know, what the, what the circumstances are in the state prison. This seems to be a widespread problem. And I think that the case is a colorful claim. We've got on, we know that the Ninth Circuit is in public decisions, remanded for evidentiary hearings in cases just like this, where we have unopposed affidavits, and again, this is a record page four and 24, both under oath by the unopposed evidence, under oath, which we have, that, that he has a colorful claim for relief, and the court should grant an evidentiary hearing. And I think that this court certified two issues in the second, which was to the district court, did the district court err in failing to hold an evidentiary hearing. And there are a number of gaps, because, you know, the thought comes up, you know, there are obviously a lot of Hispanics in, in the prison system. Why, why was it that he wasn't, didn't have access to them? What, what should we look at in the excerpts again? Excerpts of record page four is his, is his petition for a de habeas corpus, which he signs under oath. That's, that's where he says the trial court stated that he did not have appellate rights. And where does it say he couldn't find anyone? 24. Excerpts of record 24 is another affidavit that he files at the top of that, says, in fact, I will testify that other than my, than myself, the other inmates were all English speakers. The staff likewise did not speak any Spanish, lines two to four. So you, you follow what he says through until May of 2003. He hooks up with Antonio, the jailhouse lawyer. And you know, the, the attorney general, I guess we'd have to set up the circuit conflict to go your way, right? Because the sixth, and I think it's the 11th circuits and maybe the fourths have all gone the other way. No, no, no. I've got three seconds, but the sixth circuit, the language in the sixth circuit's opinion says that the language barrier alone is not told. And I, that's, that's, that's a correct statement. Then the ninth circuit should so hold. A language barrier alone should not toll because you could have a language barrier and yet have the person informed by his appellate counsel. He's got one year. I know I translate a lot of my final letters in state direct appeals after it's over in Spanish to let the people know that you've got one year to file a federal habeas. So in those cases, if there's a language barrier, you don't have it. So it's the, what the sixth circuit held was that alone was insufficient. And then it also, and then in the sixth circuit's opinion, I couldn't see actually where he, his material in the excerpt showed that there was nobody bilingual. What he, what he said was he became very discouraged and it sounds like he didn't do anything. He didn't look around. He didn't try to find anyone bilingual. And then he, he says he finally engaged in conversations with people on the prison yard and then he finds a guy who's bilingual and can help him. Nothing to show he couldn't have engaged in conversations at a prison yard earlier. This person is Antonio and he was, if you read further in the declaration, it really starts at page 21 of the excerpt to record goes to 25. He says that he was told by someone else that this person had just transferred in to that prison, this person, Antonio, he then finds him on the prison yard. So it's not as if this person, Antonio, who's this jailhouse lawyer that he paid to do this work for him was there a year earlier, finds out that he's someone that this person can help him. He then seeks him out of the prison yard and it looks, you know, he's, there are, you know, we don't know exactly when. If he had a really exotic language, like if he was from one of the hill tribes of Thailand or Laos, it would make some sense to me, but gee whiz, nobody bilingual in a prison? Yeah, in a prison state, what you've got here, though, that's very significant is you have the state telling him he has no bill rights. I mean, it's just, this is the one out of two out of a hundred cases. In the normal case, you've got a direct appeal in state court. So you've got a lawyer. He didn't even have a lawyer. And the next Sixth Circuit talks about that. In fact, the Sixth Circuit says in that case, that one of the other cases. Let's all get into the merits. We're not talking now about the delay. Right. I mean, the delay, he's told he has no appeal rights. He gets this reception, so he doesn't have a direct appeal. He has no lawyer. He's not had any lawyer throughout all of this, these proceedings. Oh, my questions have taken you way over your time limit. Let me see if my colleagues have more. Nope. Thank you, counsel. May it please the Court. Keith Warthorn, Supervising Deputy Attorney General on behalf of Respondent Warden Carey. Petitioner's equitable tolling claim under the case law of the circuit is a highly fact. Could you talk a little louder? I'm sorry, Your Honor. His equitable tolling claim is highly fact dependent. And in addressing that and looking at that, making that inquiry, there are two things I'd like the Court to focus on. And the first is how the district court responded to Petitioner's initial indication that he could not speak English and only spoke Spanish. And I'll focus on the order, the OSC, to which Petitioner had to respond and to which this evidentiary record is created. In that, the district court ordered Petitioner to make clear on the dates any petition would have been filed under the Code of Statutory Tolling and to state all facts with an emphasis on the word all. All facts relied upon Petitioner to be proved by testimony contained in a declaration signed under penalty of perjury. He was lying in that room. And, and this is the most important part, he must describe specifically the nature and duration of any extraordinary circumstances and their consequences, including properly authenticated prison records or documents which demonstrate any circumstance which Petitioner believes impeded his ability to speak. What he did file and he did talk about in some detail how many times he had tried to get somebody to tell him in his language where he could find illegal materials. And so is there any dispute that this fellow speaks only Spanish? Based on the declaration he filed in the record? No. So there's no dispute that he speaks Spanish. And I gather from reading your briefs that the state's position is this guy can go out in the prison yard and find somebody to help him to translate. Now, I believe under the California law, at least in a judicial proceeding, there's a constitutional right to an interpreter. Isn't that correct? At trial. Yes, at trial. So in other words, the state recognizes that somebody needs the information. They may be illiterate. They may be slow-witted, but at least they've got somebody translating for them. So what's this person supposed to do? He's supposed to go out in the prison yard and search around for somebody who's capable of speaking Spanish and knows enough English to be able to go find out what the relevant information is that he needs. That correctly states part of the state. So it's really the burdens on the prisoner to go find somebody to help him. The state says, if you can't, if you don't do it and you aren't diligent, then too bad. Is that the state? That's true. But that's not the sum total of our position here. Why should that be the correct? I know the state recognized an obligation to provide a rudimentary law library after many, many years of fighting it. But now. Right. Most prisons have English language rudimentary law library. It's part of the obligation to give prisoners access to the courts. Now, as Judge Fisher says, when you get to the court proceedings themselves, non-English speaking person is entitled to have an interpreter so they can understand what's going on. Now, why doesn't have the state have the same obligation to provide something to a non-English speaker so they can have the same access to the legal materials that an English speaker has? Why doesn't the state have that obligation? Oh, well, for it to for equitable tolling either that or either that or, you know, it's a state created impediment. That's the that's the problem with this case, Your Honor, whether there's a state created impediment. And and I think, as I pointed out, my my brief and that the inability to speak English alone would not be an impediment because of the due diligence requirement that's required under the statute. And and given the district courts always see, I think it was incumbent on the petitioner to come to requiring more diligence of the, in this case, a Spanish speaker than you require of an English speaker. What the record? No, because what the record would what the law requires of petitioners no more greater burden than would be required of an English speaking inmate. And now English speaking and go to the library, you know, open the book and read the book. Spanish speaker can't do that because the state does not provide the Spanish language law book. Well, if there's no exercise, more diligence, there was no allegation in there's no alternative source that they can turn to. There's there's no allegation. There's allegation that in the library. And let's put it. There's actually the declaration type petitioner belies that assertion. And I'd like to point the court to the excerpts of record at twenty three and twenty four. Now, once petitioner got to the prison, he says there's no books in Spanish except CCR Title 15 material. So actually, there were some Spanish language materials in the library. Well, CCR is the regulations, right? I understand that. And but I he then returned, quote, several times to find someone who could help him. And his only allegation is that neither that the clerks could not speak Spanish and the librarian could not speak Spanish. But and here's the key part. Most of the other inmates, not all, most of the inmates in the library. And this is on the three or the several occasions he's there were not Spanish speaking. That's a concession, I would believe, that the library. I will testify that other than myself, the other inmates were all English speaking, which would mean that they were bilingual. Put those two sentences together and he's found bilingual inmates while he's in the library. That's a fact sets of record. It's when I'm looking at it, I'm looking at what you're saying is that if most of them don't speak Spanish, that implies some of them do speak Spanish. And if all of them speak English, that means some of them speak Spanish and English. Exactly. And that's his words. That's his declaration when he was in the library on those several occasions. Now, that's the sum total of this record after being a very given a very pointed OSC by the district court to come forward with the particulars of his case to demonstrate how he was denied access. That doesn't demonstrate that that doesn't that's not an extraordinary circumstance behind his control. And then beyond that, all he says is he doesn't give any dates, but he said he then became very discouraged. And then finally, we suggest for the first time, he engaged other inmates on the prison yard. Finally, that's his word. He engaged other prisoners and was, as the court knows, was eventually referred to Spanish speaking jailhouse lawyers. In fact, two of them. Given that record, you cannot say that that that he was that an extraordinary circumstances beyond his control prevented him from filing his habeas petitions. Unless the court has any further questions. Thank you, counsel. Mendoza versus Kerry is submitted.
judges: Kleinfeld, Tashima, Fisher